IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

January 26, 2026 03:52 PM
SCT-Civ-2024-0113
**DALILA E. PATTON, ESQUIRE**
**CLERK OF THE COURT**

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

PRISCA ALEXANDER,  )   **S. Ct. Civ. No. 2024-0113**
　　　Appellant/Petitioner,  )   Re: Super. Ct. Misc. No. 28/2023 (STT)
　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　 )
GOVERNMENT OF THE VIRGIN ISLANDS,  )
　　　Appellee/Respondent.  )
　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
_____ )

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Harold W.L. Willocks

Argued: May 13, 2025
Filed: January 26, 2026

Cite as 2026 VI 1

BEFORE:　　**RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Beverly A. Edney, Esq.**
St. Croix, U.S.V.I.,
　　　*Attorney for Appellant,*

**Lauren Boudreaux, Esq.**
Assistant Attorney General
St. Thomas, U.S.V.I.,
　　　*Attorney for Appellee.*

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1　　Prisca Alexander appeals from the Superior Court's April 26, 2024 order denying her

*Alexander v. Gov't of the V.I.*  2026 VI 1
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 2 of 12

petition for writ of coram nobis.[1] For the reasons that follow, we reverse.

## I. BACKGROUND

¶ 2    Alexander is a national of Dominica and became a permanent resident of the United States on March 8, 2006. In 2009, the People of the Virgin Islands charged Alexander with several embezzlement and fraud charges stemming from an alleged scheme in which she conspired with another person to defraud OfficeMax of money between October 2008 and February 2009. Alexander, while represented by the Office of the Territorial Public Defender, initially pled not guilty to the charges but soon thereafter entered into a plea agreement with the People in which she agreed to plead guilty to one count of obtaining money by false pretenses in violation of title 14, section 834(2) of the Virgin Islands Code in exchange for dismissal of all other charges. The Superior Court held a change of plea hearing on January 8, 2010, where it accepted the plea agreement, and orally sentenced Alexander on March 15, 2010, to one year incarceration with all but eleven days suspended, and with eleven days credit for time served, as well as one year of supervised probation, payment of restitution in the amount of $6,601.50, performance of 100 hours of community service, and various fees and costs.

¶ 3    On March 31, 2010, the Supreme Court of the United States issued its decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the Supreme Court held that a claim that counsel failed to inform a criminal defendant that a plea carries a risk of deportation is cognizable under the ineffective assistance of counsel framework first set forth in *Strickland v. Washington*, 446 U.S. 668 (1984), and that an attorney's failure to provide accurate legal advice to a noncitizen

---

[1] A petition for writ of coram nobis is an ancient common-law writ that is "[v]iewed as essentially a remedy of last resort" in which errors in a criminal conviction may be corrected even if the petitioner has fully served his or her sentence and is no longer in custody. *See Elmour v. Gov't of the V.I.*, 54 V.I. 740, 748 (D.V.I. App. Div. 2010).

*Alexander v. Gov't of the V.I.*  2026 VI 1
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 3 of 12

accused of a crime with respect to whether pleading guilty to an offense may trigger federal deportation proceedings satisfies the first element of *Strickland*—that the attorney provided constitutionally deficient assistance that fell below the objective standard of reasonableness. The Supreme Court, however, determined that the second *Strickland* factor—that but for the error the result of the proceeding would have been different—remains a highly fact-intensive inquiry and that an attorney's deficient failure to provide accurate advice on the immigration consequences of a guilty plea may not always result in the prejudice necessary to grant relief.

¶ 4     The Superior Court entered a written judgment on April 8, 2010, which memorialized the oral sentence announced at the March 15, 2010 change of plea hearing. The April 8, 2010 judgment did not acknowledge the *Padilla* decision, and Alexander did not appeal from the April 8, 2010 judgment or file any post-judgment motions, premised on *Padilla* or otherwise. Alexander also did not file any petitions for writ of habeas corpus during the period that she remained on supervised release.

¶ 5     After the original criminal case concluded, the United States instituted removal proceedings against Alexander, which resulted in an immigration judge issuing a June 25, 2012 order providing for her removal from the United States. Nevertheless, Alexander has not yet been deported, and over the past decade initiated several proceedings to attempt to set aside the removal order.

¶ 6     On August 29, 2023, Alexander filed a petition for writ of coram nobis with the Superior Court. In her petition, Alexander asserted that the public defender who represented her in the criminal proceeding knew that she was not a United States citizen, yet failed to inform her of the possible immigration consequences of her guilty plea, and that the judge likewise failed to inform her of potential collateral immigration consequences during the January 8, 2010 change of plea

*Alexander v. Gov't of the V.I.*
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 4 of 12

2026 VI 1

hearing. Alexander argued that she is entitled to a writ of coram nobis despite fully serving her sentence under the April 8, 2010 judgment because that judgment forms the sole basis for the June 25, 2012 removal order and that she would not have pled guilty had she known that doing so would trigger removal proceedings.

¶ 7     In a November 17, 2023 order, the Superior Court ordered the Government of the Virgin Islands to respond to Alexander's petition, which the Government ultimately did on March 12, 2024. In its response, the Government asserted that the United States Supreme Court held in *Chaidez v. United States*, 568 U.S. 342 (2013), that the *Padilla* decision did not apply retroactively because it did not constitute a "new rule" of criminal procedure under *Teague v. Lane*, 489 U.S. 288 (1989), and that Alexander was not entitled to any post-conviction relief because she had been sentenced on March 15, 2010, while *Padilla* issued on March 31, 2010. The Superior Court held a hearing on March 13, 2024, where it orally directed both parties to file written briefs on the question of whether a criminal judgment becomes effective on the date it is orally pronounced or when it is memorialized into writing.

¶ 8     After receiving briefs from the parties, the Superior Court issued an April 26, 2024 order denying the petition for writ of coram nobis. In its order, the Superior Court agreed with the Government that Alexander's conviction became final when she was orally sentenced on March 15, 2010, and that retroactively applying *Padilla* to her conviction would be improper under *Chaidez*. The Superior Court arrived at this decision by relying on *Cheatham v. People*, S. Ct. Crim. No. 2008-0026, 2009 V.I. Supreme LEXIS 22, at *7 (V.I. Mar. 27, 2009), an unpublished opinion of this Court in which it held that "in the absence of a written judgment reflecting that the court is suspending part of the sentence, the oral sentence takes precedence over the judgment" and that "when there is variation between an oral pronouncement of sentence and a subsequent

*Alexander v. Gov't of the V.I.* 2026 VI 1
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 5 of 12

written judgment, the oral pronouncement controls."

¶ 9     Alexander filed a motion for reconsideration on May 3, 2024, which asserted that the April 26, 2024 order erroneously relied on *Cheatham* since the opinion in that case only considered which judgment controls in a situation where a subsequent written judgment directly conflicts with an earlier oral judgment in the same case. Rather, Alexander asserts that the controlling authorities are numerous cases in which this Court has held that "[i]n a criminal case, the written judgment embodying the adjudication of guilt and sentence imposed based on that adjudication constitutes a final judgment."[2] Ultimately, the Superior Court denied the motion for reconsideration in an October 8, 2024 order, on grounds that the right to appeal in a criminal case is not limited only to situations where the Superior Court renders a written judgment. Alexander filed an untimely notice of appeal with this Court on November 6, 2024. *See* V.I. R. App. P. 5(a)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 10     "This Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a); *see also* 48 U.S.C. § 1613a(d). Because the Superior Court's April 26, 2024 order resolved all claims between the parties, it constitutes an appealable final judgment under section 32(a).

¶ 11     This Court exercises plenary review over applications of law but reviews findings of fact only for clear error. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

---

[2] *See, e.g., Corraspe v. People*, 2024 VI 21.

*Alexander v. Gov't of the V.I.*       2026 VI 1
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 6 of 12

## B. Timeliness of Notice of Appeal and Validity of October 8, 2024 Order

¶ 12    Ordinarily, a party may file a notice of appeal within 60 days after entry of final judgment in a civil case where the Government of the Virgin Islands or an officer or agency thereof is a party. *See* V.I. R. APP. P. 5(a)(1). As such, to timely appeal from the Superior Court's April 26, 2024 order, Alexander was ordinarily required to file her notice of appeal no later than June 25, 2024. However, she did not file her notice of appeal until several months later, on November 6, 2024.

¶ 13    Alexander likely delayed filing her notice of appeal due to the pendency of her May 3, 2024 motion for reconsideration of the April 26, 2024 order. Although a motion for reconsideration is not amongst the motions set forth in Rule 5(a)(4) of the Virgin Islands Rules of Civil Procedure which toll the time to file a notice of appeal, "[w]hen a party files a motion for reconsideration after entry of a final judgment, this Court treats the motion as a motion filed pursuant to [Rule 59]" of the Virgin Islands Rules of Civil Procedure. *Reynolds v. Rohn*, 70 V.I. 887, 898 (V.I. 2019); *see also* V.I. R. APP. P. 5(a)(4) (providing that motions "to alter or amend the judgment or order; or (if filed within 28 days) for relief from the judgment or order" toll the time to file a notice of appeal).

¶ 14    But treating Alexander's motion for reconsideration as a timely-filed Civil Rule 59 motion still does not render her appeal timely. Appellate Rule 5(a)(4) further provides "that the failure to dispose of [a Rule 59] motion by order entered upon the record within 120 days after the date the motion was filed shall constitute a denial of the motion for purposes of appeal." Although the Superior Court purported to rule on Alexander's May 3, 2024 motion for reconsideration in its October 8, 2024 order, the 120-day period for the Superior Court to rule on the motion actually

*Alexander v. Gov't of the V.I.*
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 7 of 12

2026 VI 1

expired on September 3, 2024.[3] Because her motion for reconsideration had been deemed denied on September 3, 2024, the deadline for Alexander to file a notice of appeal from the April 26, 2024 order was November 4, 2024.[4] Alexander, however, did not file her notice of appeal until two days later, on November 6, 2024. And while the Superior Court issued an October 8, 2024 order purporting to deny the motion for reconsideration, the issuance of this order did not reopen the time to appeal since it "was a nullity because the court did not have jurisdiction to rule after the 120-day tolling period had passed, and therefore its issuance could not resurrect or reinstate the time for [an appellant] to file a notice of appeal." *Alicea v. Meyers*, 75 V.I. 353, 360 (V.I. 2021) (quoting *Companion Assurance Co. v. Smith*, 66 V.I. 562 (V.I. 2017)) (internal quotation marks omitted).

¶ 15    Under ordinary circumstances, Alexander's failure to timely file a notice of appeal might compel this Court to dismiss it as untimely. *See Gov't of the V.I. v. Crooke*, 54 V.I. 237, 254 (V.I. 2010) (noting that relaxing the requirements of Appellate Rule 5 would "severely undermine and weaken" the rule's purpose). However, because the time to file a notice of appeal pursuant to Appellate Rule 5 constitutes a non-jurisdictional claims-processing rule, it remains subject to equitable tolling at the discretion of this Court or waiver if not timely raised by the opposing party. *Peters v. People*, 60 V.I. 479, 484 (V.I. 2014).

¶ 16    Here, the Government has clearly waived any challenge to the timeliness of Alexander's notice of appeal by not raising it in either its appellate brief or any pre-briefing motion filed with

---

[3] Because the 120th day fell on August 31, 2024—a Saturday—and the following Monday was September 2, 2024, a legal holiday—Labor Day—the deadline for the Superior Court to rule on Alexander's motion was automatically extended to September 3, 2024. *See* V.I. R. APP. P. 16(b).
[4] Because the 60th day fell on November 2, 2024—a Saturday—the deadline for the Alexander to file a notice of appeal was automatically extended to Monday November 4, 2024. *See* V.I. R. APP. P. 16(b).

*Alexander v. Gov't of the V.I.*
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 8 of 12

2026 VI 1

this Court. *See Bryan v. Gov't of the V.I.*, 56 V.I. 451, 457 (V.I. 2012). And while the time to file a notice of appeal is amongst the rare category of claims-processing rules that this Court may invoke *sua sponte* since it implicates interests beyond those of the parties to the case, *see Simon v. Joseph*, 59 V.I. 611 (V.I. 2013), dismissing this appeal as untimely after it has been fully briefed furthers few such interests, given that the notice of appeal was only filed two-days late, and the sole issue on appeal involves a pure question of law involving construction of this Court's own prior precedents. Therefore, we decline to *sua sponte* dismiss this appeal as untimely, but instead vacate the October 8, 2024 order as a nullity and proceed to consider the merits of only the April 26, 2024 order.

### C. Denial of Coram Nobis Petition

¶ 17    While framed as five separate issues in her appellate brief, this appeal ultimately implicates only one question: did the Superior Court err when it held that the final judgment in Alexander's criminal case was rendered on March 15, 2010, rather than April 8, 2010? If the Superior Court correctly held that Alexander's conviction became final on March 15, 2010, then her coram nobis petition is unquestionably procedurally barred pursuant to the U.S. Supreme Court's *Chaidez* decision holding that *Padilla* does not apply retroactively to convictions that were already final on the date *Padilla* was decided. However, if the final judgment in the underlying criminal case was the April 8, 2010 written judgment, then Alexander's coram nobis petition is not procedurally barred under *Chaidez* and the Superior Court may proceed to consider it on the merits.

¶ 18    We hold that the Superior Court erred in determining that the final judgment in Alexander's case had been rendered on March 15, 2010. As Alexander correctly notes in her brief, the *Cheatham* case the Superior Court cited in its April 26, 2024 order is entirely inapposite, since the passages cited by the Superior Court plainly address conflicts between oral and written orders and

*Alexander v. Gov't of the V.I.*
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 9 of 12

2026 VI 1

say absolutely nothing about whether an oral sentencing order constitutes a final judgment that ends a case. Even if we were to consider the new authorities the Superior Court cited in its October 8, 2024 order—a nullity due to being issued outside the 120-day period codified in Appellate Rule 5(a)(4)—those authorities are also inapposite. While the Superior Court correctly noted that title 4, section 33(d)(5) of the Virgin Islands Code "does not limit the right to appeal only upon entry of a written judgment," it ignored a crucial factor: that section 33(d)(5) applies only to <u>interlocutory</u> appeals and not to appeals from final judgments. *See First American Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 605–12 (V.I. 2011).

¶ 19    This Court has long held that "[a] final judgment is one that ends the litigation on the merits and leaves nothing to do but execute the judgment." *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010) (internal quotation marks omitted). However, it should go without saying that a final judgment must <u>also</u> satisfy the requirements of a *judgment*. Rule 32(k) of the Virgin Islands Rules of Criminal Procedure expressly sets forth the requirements for a judgment in a criminal case:

> A judgment of conviction shall set forth the information, the plea, the findings, the adjudication and sentence. It shall contain the number of the section and the title or a reasonably short description of the statute or ordinance under which conviction was had. <u>The court must sign the judgment, the clerk must enter it, and it must be transmitted to the authority taking custody of or having supervision over the defendant.</u> If the defendant is found not guilty or for any other reason is entitled to be discharged, the judgment shall be entered accordingly.

(Emphases added.)[5]    By its own terms, Criminal Rule 32(k) requires that all judgments be in

---

[5] The Virgin Islands Rules of Criminal Procedure first went into effect on December 1, 2017, several years after the Superior Court sentenced Alexander. However, at the time of sentencing, the Federal Rules of Criminal Procedure generally applied to criminal cases in the Superior Court by virtue of former Superior Court Rule 7. Like Virgin Islands Criminal Rule 32(k), Rule 32(k) of the Federal Rules of Criminal Procedure also requires that "[t]he judge must sign the judgment," thus necessarily mandating that all judgments—whether final or non-final—be in writing.

*Alexander v. Gov't of the V.I.*
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 10 of 12

2026 VI 1

writing. As such, an oral sentence can never constitute a judgment, let alone a final judgment. This is further reflected in the provisions of the Virgin Islands Rules of Appellate Procedure pertaining to appeals in criminal cases, which provides that "[a] notice of appeal filed after the announcement of a decision, sentence, or order -- but before entry of the judgment or order -- is treated as filed on the date of and after the entry of judgment." V.I. R. APP. P. 5(b)(1). Consistent with Appellate Rule 5(b)(1) and Criminal Rule 32(k), in literally every criminal case this Court has calculated the time to file a notice of appeal not from the date of oral sentencing, but from the date of entry of the written judgment. *See, e.g., Fahie v. People,* 62 V.I. 625, 629 (V.I. 2015) (identifying the written judgment and commitment as the "final judgment" in the criminal case); *Irons v. People,* 57 V.I. 473, 477 n.2 (V.I. 2012) ("A notice of appeal filed by a defendant in a criminal case after the announcement of the trial court's ruling, but before the entry of a written judgment embodying that ruling, is 'treated as if filed on the date of and after entry of [the written judgment], and is considered timely filed.'") (quoting *Shoy v. People,* 55 V.I. 919, 924 n.2 (V.I. 2011)). As such, the final judgment in Alexander's criminal case was not rendered until April 8, 2010, the day that the Superior Court issued its written judgment and it was entered by the Clerk of the Superior Court.

¶ 20    For these reasons, the Superior Court erred in concluding that the petition for writ of coram nobis was procedurally barred under *Chaidez*, since the U.S. Supreme Court issued its *Padilla* decision on March 31, 2010, and the Superior Court had not rendered a final judgment in Alexander's criminal case until April 8, 2010. Thus, applying the rule announced in *Padilla* to Alexander would not constitute a retroactive application of *Padilla*, since Alexander's case had still been open at the time *Padilla* was decided. Consequently, we reverse the Superior Court's April 26, 2024 order.

*Alexander v. Gov't of the V.I.*       2026 VI 1
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 11 of 12

¶ 21    We emphasize, however, that reversing the April 26, 2024 order does not mean that the Superior Court must grant Alexander the writ of coram nobis on remand. While the relief Alexander seeks is not barred under *Chaidez*, it may potentially be procedurally barred on other grounds, such as laches due to the 13-year delay in filing the petition. *See, e.g., Jones v. State*, 126 A.3d 1162, 1173-74 (Md. 2015). Moreover, even if not procedurally barred, Alexander would still possess the burden of proving that her counsel never advised her on the immigration consequences of her plea—a factual issue that the Government disputes[6]—as well as proving the second *Strickland* factor: that the result of the proceeding would have been different had she been so advised.

### III. CONCLUSION

¶ 22    Although Alexander filed an untimely notice of appeal, this Court will nevertheless resolve this case on the merits because the Government failed to challenge the timeliness of the appeal and the case involves a pure question of law which has been fully briefed by the parties. With respect to the merits, this Court concludes that the Superior Court erred in characterizing the March 15, 2010 oral sentence as the final judgment in Alexander's criminal case, and that Alexander's coram nobis petition was therefore not procedurally barred under the U.S. Supreme Court's *Chaidez* decision. Therefore, we reverse the Superior Court's April 26, 2024 order and vacate its October 8, 2024 order, and remand the case to the Superior Court for further proceedings.

**Dated this 26th day of January, 2026.**

---

[6] In its opposition to the coram nobis petition, the Government noted that it had spoken with the attorney who represented Alexander in her criminal case, and that he was prepared to testify that he did advise her about the immigration consequences of her plea.

*Alexander v. Gov't of the V.I.*
S. Ct. Civ. No. 2024-0113
Opinion of the Court
Page 12 of 12

2026 VI 1

BY THE COURT:

/s/ Rhys S. Hodge
**RHYS S. HODGE**
**Chief Justice**

ATTEST:

**DALILA E. PATTON, ESQ.**
**Clerk of the Court**
By: *Keisha Lo*
**Deputy Clerk II**

Dated: 1-26-2026

**SWAN, Associate Justice, concurring.**

¶ 23    I concur in the judgment because statutory and case law precedents leave little alternative for a different conclusion. Yet the outcome of this case leaves me deeply troubled, and I cannot refrain from writing separately to raise the alarm for attorneys who might otherwise be unaware of the farthest limits of their legal responsibilities to criminal clients. I intend for this concurrence to raise the awareness of oft-overlooked expectations of criminal defense attorneys beyond the point in time when all practical responsibilities to a client appear to have ended. If more attorneys were aware of these obligations, outcomes like today's judgment could be avoided.

¶ 24    As all competent attorneys know, one's responsibility to one's client is a sacred duty of the legal profession. This responsibility is particularly vital vis-à-vis clients facing charges in criminal matters, as the right of a criminal defendant to the assistance of legal counsel in his or her defense is enshrined in the Sixth Amendment of the United States Constitution. Equally sacrosanct are the accused's associated rights to a speedy and public trial by an impartial jury, to be informed of the charges, and to confront witnesses. U.S. Const. amend. VI. Therefore, a criminal defense attorney must be especially diligent in providing the best counsel possible to a criminal client given the significant stakes often involved in criminal matters.

¶ 25    Here, it must be emphasized that Alexander's trial counsel, far from being ineffective, provided highly effective assistance from the time of his appointment to the case to the date of sentencing. According to the sworn affidavit of Police Detective Lynod Richardson, submitted by the People, Alexander's criminal acts were well documented by OfficeMax's video surveillance system and digital and print records. Considering the strength of the People's case against Alexander as well as the gravity of the charges and their respective potential penalties, counsel's

advice at that juncture in the case that Alexander accept the People's proffered plea agreement not only fell within the bounds of effective assistance of counsel but was likely the best possible guidance he could have given his client. Had Alexander been found guilty on all charges, she could have confronted decades of incarceration. Instead, pursuant to the plea agreement, Alexander exited the courthouse a free woman at the termination of her sentencing hearing on March 15, 2010. Any criminal defense attorney could certainly consider such an outcome an exceptional achievement.

¶ 26    The attorney's sole alleged error was failing to alert Alexander, a Dominica national and U.S. permanent resident, of the possible immigration consequences of her guilty plea when he recommended to her that she accept the offered plea agreement. (It is noteworthy that Alexander's counsel denies Alexander's claim that he never told her about the immigration consequences of her plea. According to his statements made to the People, it has always been his practice to advise his clients of the possible immigration consequences of any plea.) Informing noncitizen defendants of the potential immigration consequences of their various defense options has long been considered good practice for defense attorneys, but it was not an essential requirement of effective assistance of counsel until March 31, 2010, when the Supreme Court of the United States issued its decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). It is significant that the *Padilla* opinion was issued by the United States Supreme Court after Alexander's sentencing proceeding in the trial court had terminated. However, the U.S. Supreme Court's opinion was issued prior to the entry of the written judgment memorializing Alexander's sentence. In *Padilla*, the Supreme Court held that an attorney's failure to inform a noncitizen criminal defendant that pleading guilty to a criminal charge could trigger deportation proceedings is sufficient to determine that the

attorney provided constitutionally deficient legal assistance falling short of an objective standard of reasonableness. This determination of constitutionally deficient assistance is the first of two prongs delineated in *Strickland v. Washington,* 446 U.S. 668 (1984), which provide a framework for evaluating whether a petitioner has a reasonable claim for ineffective assistance of counsel. Under *Padilla,* counsel's failure to alert a criminal defendant of the potential immigration consequences of a plea deal meets the first *Strickland* prong of objectively deficient assistance of counsel, but the petitioner must still prove the second element: that, but for the error, the result of the case would have been different. Here, as the majority has noted, Alexander has yet to provide evidence that the outcome of her criminal case would have changed if not for her attorney's alleged failure to inform her of the potential immigration consequences of her plea deal.

¶ 27    If, indeed, Alexander's trial counsel failed to inform her of the possible deportation consequences of her plea agreement, then, post-*Padilla,* such an omission would constitute ineffective assistance of counsel under the Sixth Amendment. However, as stated above, *Padilla* was not issued until March 31, 2010. Nearly all of the events of this case occurred before that date. Alexander signed the plea agreement on December 11, 2009. The trial court held a change of plea hearing on January 8, 2010, at which time Alexander pled guilty to one count of obtaining money by false pretenses, in accordance with the plea agreement. The trial court then held a sentencing hearing on March 15, 2010, accepted the plea agreement, and sentenced Alexander to a suspended sentence, time served, probation, community service, and various fees and costs. As of the end of the March 15, 2010 hearing, the criminal matter against Alexander was effectively complete, but for the rendering of the written judgment in accordance with Rule 32(k) of the Virgin Islands Rules of Criminal Procedure. The oral judgment of March 15, 2010 was sufficient to

trigger the post-conviction procedures of initiating probation and scheduling restitution payments, the first of which was due by March 30, 2010. All of this occurred before the U.S. Supreme Court issued its decision in *Padilla*, and therefore occurred before the Supreme Court declared that an attorney's failure to inform a criminal defendant client of the potential immigration consequences of a guilty plea constitutes objectively deficient assistance of counsel. Therefore, Alexander's trial counsel was not constitutionally required at any time during the case, up to and including the March 15, 2010 sentencing hearing, to inform Alexander of the potential immigration consequences of a guilty plea.

¶ 28    However, this case was not legally complete as of the March 15, 2010 sentencing hearing. Pursuant to V.I. Rule of Criminal Procedure 32(k), a criminal judgment in this jurisdiction must be reduced to writing, signed by the court, and entered by the clerk of the court. Here, there was a three-week hiatus between the March 15, 2010 sentencing hearing and the entry of the written judgment on April 8, 2010. The U.S. Supreme Court issued *Padilla* in the interim, on March 31, 2010. Therefore, in the week after the March 31, 2010 issuance of *Padilla* but before the April 8, 2010 entry of the written final judgment in this case, Alexander's trial attorney had a constitutional responsibility to remedy his alleged failure to alert Alexander to the possible immigration consequences of her guilty plea. This, then, is the crux of this case. Because *Padilla* was issued and its requirements for attorneys became effective one week before the statutory termination of the Alexander criminal case, Alexander's trial attorney is rightly to be held to the standards required by *Padilla* in his actions or omissions in the Alexander case.

¶ 29    Yet despite this conclusion, the results in this case are unsettling. Just how much focus should criminal defense attorneys continue to give to cases that have already been effectively

concluded with oral judgments? How quickly are attorneys to be expected to familiarize themselves with the contents and effects of each newly issued U.S. Supreme Court case? The practical answers and the legal answers to these questions differ. In practical terms, many defense attorneys, especially public defenders, are overworked and understaffed and do their best to provide zealous and competent representation to clients charged with a plethora of crimes on an overloaded schedule. While attorneys are expected to be kept informed on new and changing law, especially case law precedent issued by the U.S. Supreme Court, it seems almost unreasonable to demand that an attorney reads every U.S. Supreme Court opinion within days of its release, consider its application to each of the attorney's assigned cases that have already been effectively concluded, and take action accordingly at the eleventh hour. Yet, this is exactly what attorneys are required to do.

¶ 30 Our profession serves the vital purpose of furthering justice, and none is perhaps more indispensable to that purpose than a criminal defense attorney. Officers of the law are held to standards that may, at times, seem impractical or even impossible, yet those are the standards to which we each agree when we pursue this vocation and take an oath to uphold the Constitution. We promise to expect more of ourselves and of each other than is required or expected in most professions, and we benefit accordingly from the diligence and zeal of our colleagues' efforts to meet those lofty standards. Outcomes like today's may make many uncomfortable by placing what appears to be blame upon an attorney who would have found it difficult to perform his job any more successfully than he did. However, the answer is not to allow greater laxity within our profession but rather to make attorneys more consistently cognizant of the high expectations and myriad responsibilities to which they are parties. Criminal defense attorneys are responsible for

staying abreast of their assigned cases until the moment a written judgment is entered, and their duty of zealous advocacy ends only at the same moment. Given defense attorneys' workloads, this is not an easy obligation to fulfill, yet it is what all officers of the law have sworn to attempt to the best of their ability. Let this serve as a reminder that ours is not a vocation for those easily daunted by heavy workloads and lofty standards. We have sworn to give the best of ourselves to our profession. Today's decision reflects the solemn weight and consequences of that vow.

Dated this 26" day of January, 2026.

IVE ARLINGTON SWAN

**Associate Justice**

ATTEST:

**DALILA E. PATTON, ESQ.**
**Clerk of the Court**

By:

Dated: 1-26-2026