IN THE SUPREME COURT
OF THE VIRGIN ISLANDS
**FILED**
June 08, 2026 12:03 PM
SCT-Civ-2023-0041
DALILA E. PATTON, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| RODGER P. BRESSI, as Trustee of the **RODGER P. BRESSI, JR. TRUST,**<br>Appellant/Plaintiff,<br><br>v.<br><br>**WARREN MOSLER, as Trustee of the WARREN B. MOSLER REVOCABLE TRUST; LUKE BUSE, as Trustee of the STACI LIN BUSE TRUST; and SPARTAN CONCRETE PRODUCTS, LLC,**<br>Appellees/Defendants. | **S. Ct. Civ. No. 2023-0041**<br>Re: Super. Ct. Civ. No. 576/2016 (STX) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Jomo Meade

Considered: March 19, 2026
Filed: June 8, 2026

Cite as: 2026 VI 12

**BEFORE:**  **RHYS S. HODGE**, Chief Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **HAROLD W.L. WILLOCKS**, Associate Justice.

**APPEARANCES:**

**Rhea R. Lawrence, Esq.**
Lee J. Rohn & Associates, LLC
St. Croix, U.S.V.I.
       *Counsel for Appellant*,

**David J. Cattie, Esq.**
The Cattie Law Firm, P.C.
St. Thomas, U.S.V.I.
       *Counsel for Appellees*.

## OPINION OF THE COURT

**HODGE, Chief Justice.**

*Bressi v. Mosler*                                          2026 VI 12
S. Ct. Civ. No. 2023-0041
Opinion of the Court
Page 2 of 14

¶ 1     Rodger P. Bressi appeals a 2023 order of the Superior Court. That order granted a motion for relief from judgment—which was filed by Warren Mosler, Luke Buse, and Spartan Concrete Products, LLC (collectively, "Appellees")—and reinstated this action over six years after it was dismissed. For the reasons that follow, we reverse the 2023 order and reinstate the dismissal.

## I. BACKGROUND

¶ 2     This is an action for dissolution of an LLC and associated damages. Bressi alleges that Mosler became the majority owner of Spartan Concrete Products, LLC, in violation of the LLC's operating agreement; unilaterally managed the LLC's assets; denied Bressi access to financial records; and withheld Bressi's salary. Bressi seeks dissolution, accounting, damages, and injunctions recognizing him as manager and expelling Mosler from the LLC.[1]

¶ 3     Events of December 7, 2016, eventually gave rise to this appeal. At 8:47 a.m. on the 7th, Appellees filed an answer to the complaint with affirmative defenses and counterclaims. At 1:50 p.m. that afternoon, Bressi filed a notice in the nature of a voluntary dismissal under Rule 41(a)(1) of the Virgin Islands Rules of Civil Procedure.[2] The Superior Court, addressing Bressi's filing, dismissed the case six days later without any mention of Appellees' answer or counterclaims. Appellees quickly filed a "Motion for Releif [*sic*] from Judgment" on January 9, 2017. Invoking Rules 59(e), 60(a), and 60(b), Appellees argued that dismissal was improper because once a defendant files an answer or counterclaim, a plaintiff cannot voluntarily dismiss under Rule 41(a)(1).

---

[1] This is not the parties' first dispute. Bressi first sued Appellees over Spartan Concrete Products in 2015, making substantially the same allegations about Mosler's conduct and seeking similar relief. The parties eventually entered into a settlement and release agreement and stipulated to a dismissal with prejudice, which the Superior Court granted on November 24, 2015.

[2] Bressi dated the notice of dismissal and certificate of service December 6, 2016, but the Clerk of the Superior Court stamped the notice as filed at 1:50 p.m. on December 7. Bressi admits in his brief that Appellees filed their answer and counterclaims before he filed his notice of dismissal.

¶ 4     For the next two years the case lay dormant. It was ultimately reassigned to a different judge, and on May 21, 2019, the court held a hearing on Appellees' motion for relief. The court queried whether it could grant the motion in part and vacate the dismissal as to only Appellees' counterclaims. Bressi, however, countered that the court had lost jurisdiction to rule on the motion because Appellate Rule 5(a)(4) sets a deadline of 120 days for a ruling on a post-judgment motion such as the one Appellees filed. The court received supplemental briefing on its jurisdiction, and then another four years passed without any activity on the docket.

¶ 5     On July 31, 2023—over six years after Appellees filed their motion for relief—the court granted the motion. Appellate Rule 5(a)(4), the court held, was inapplicable and the 2016 dismissal improper. Citing both Rule 60(a) and 60(b), the court stated that the 2016 dismissal was the result of "clerical error or inadvertence" because it was unaware that Appellees had filed their answer and counterclaims before Bressi filed his Rule 41(a)(1) notice of dismissal. The court also held that Appellees' counterclaims could proceed for independent adjudication under Rule 41(a)(2). The court entered a corresponding order (the "2023 Order") that vacated the 2016 dismissal as to Appellees' counterclaims only.

¶ 6     Bressi filed a timely notice of appeal. *See* V.I. R. APP. P. 5(a)(1). We are presented with two questions: Do we have appellate jurisdiction over the 2023 Order? If so, is the 2023 Order void under Appellate Rule 5(a)(4)?

## II. DISCUSSION

### A. Appellate Jurisdiction

¶ 7     We may reach the merits of an appeal only if we have appellate jurisdiction. *Evans-Freke v. Evans-Freke*, 2023 VI 12, ¶ 11. Appellees contend that we do not have jurisdiction. They maintain that the 2023 Order is neither a "final" judgment nor part of the small class of interlocutory

orders that are appealable. *See* V.I. CODE ANN. tit. 4, §§ 32(a), 33(b). They also assert that the 2023 Order granted relief under Rule 60 and that, at least in federal court, such orders typically are not immediately appealable.

¶ 8      Bressi, however, argues that we do have jurisdiction. He acknowledges that the 2023 Order does not satisfy the final judgment rule, but he urges us to apply an exception derived from federal jurisprudence. That exception, he says, allows immediate appellate review when the trial court vacates a final judgment and the appeal challenges the trial court's jurisdiction to do so. Applying that exception here, Bressi observes that the 2023 Order vacated the 2016 dismissal, and he emphasizes that his only challenge to the 2023 Order is that Appellate Rule 5(a)(4) deprived the Superior Court of jurisdiction to enter it.

¶ 9      The general rule, of course, is that we have jurisdiction over appeals arising from final judgments, final decrees, and final orders of the Superior Court. 4 V.I.C. § 32(a). Yet there are exceptions "as provided by law." *Id*. Some exceptions have been prescribed by statute. *See*, *e.g.*, 4 V.I.C. § 33(b) (certain interlocutory orders); 4 V.I.C. § 33(c) (certified substantial and disputed questions of law). Others have been recognized by case law, such as the collateral order doctrine, *see Enrietto v. Rogers Townsend & Thomas P.C.*, 49 V.I. 311, 319–20 (V.I. 2007) (*per curiam*), and the stand-on-the-pleadings doctrine, *see In re Estate of Gibbs*, 2025 VI 24, ¶¶ 14–15 (citing *Mills-Williams v. Mapp*, 67 V.I. 574, 582 (V.I. 2017)). In recognizing these case law doctrines, we noted that they were already well grounded in the jurisprudence of other jurisdictions. *See Enrietto*, 49 V.I. at 319–20 (collecting cases); *Mills-Williams*, 67 V.I. at 582 (collecting cases). We stressed, too, that these doctrines, "modest" in scope, will not be made to swallow the general requirement of finality. *Enrietto*, 49 V.I. at 319 (citing *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

¶ 10     Bressi contends that the doctrine he advocates is both narrow and well grounded in federal law. We agree. Several federal courts of appeals recognize the doctrine. In *National Passenger Railroad Corp. v. Maylie*, Judge Higginbotham concluded for a unanimous panel of the Third Circuit Court of Appeals that

> [w]hen an order granting a Rule 60(b) motion merely vacates the judgment and leaves the case pending for further determination, the order is akin to an order granting a new trial and in most instances, is interlocutory and nonappealable. . . . However, *Stradley v. Cortez*, 518 F.2d 488 (3d Cir. 1975), and *Demeretz v. Daniels Motor Freight, Inc.*, 307 F.2d 469 (3d Cir. 1962), describe a very limited exception to this rule. "When the trial court's power to grant a new trial is challenged, what would otherwise be an interlocutory order is treated as an appealable final order."

910 F.2d 1181, 1183 (3d Cir. 1990) (quoting *Stradley*, 518 F.2d at 491). *Maylie* emphasized the doctrine's narrowness: Jurisdiction attached only because the appeal challenged "the power of the [trial] court" to enter the order of vacatur and did so "irrespective of the merits of the order itself." *Id*. At least five other circuit courts agree with *Maylie*.[3] The Fifth Circuit, for example, holds that while "ordinarily" an order "granting a motion under Rule 60 for relief from a final judgment is . . . not appealable," if the "*appellant attacks the jurisdiction of the* [*trial*] *court* to vacate the judgment," then "an appeal will lie to review the power of the court to enter such an order." *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004) (emphasis in original). And no fewer than three state supreme courts have held the same *vis-à-vis* their rules of civil procedure. *See Wolfork v. Yale Med. Grp.*, 239 A.3d 272, 280–81 (Conn. 2020); *Asset Acceptance, LLC v. Moberly*, 241 S.W.3d 329, 333–34 (Ky. 2007); *Chavoor v. Lewis*, 422 N.E.2d 1353, 1356 & n.1 (Mass. 1981).

---

[3] *See Littman v. Bache & Co.*, 246 F.2d 490, 492 & n.2 (2d Cir. 1957); *Hand v. United States*, 441 F.2d 529, 530 n.1 (5th Cir. 1971) (*per curiam*); *McDowell v. Dynamics Corp. of Am.*, 931 F.2d 380, 382 (6th Cir. 1991); *Jones & Guerrero Co. v. Sealift Pac.*, 650 F.2d 1072, 1073–74 (9th Cir. 1981) (*per curiam*); *Tobriner v. Chefer*, 335 F.2d 281, 282–83 (D.C. Cir. 1964); *see also Chicago & Nw. Ry. Co. v. Britten*, 301 F.2d 400, 401–02 (8th Cir. 1962) (likewise for a Rule 59 new trial order); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1329 n.10 (11th Cir. 1999) (same).

¶ 11    Appellees object that Bressi is advocating a "heretofore nonexistent exception" to the final

judgment rule. Given the *Maylie* line of cases, that is simply not so. In fact, as an historical matter,

the *Maylie* doctrine of appellate jurisdiction has its roots in a litany of nineteenth-century decisions

under the old common law rules of procedure. At a time when federal courts sat at different "terms"

of court with intervening vacations, the rule at common law was that a trial court could set aside a

final judgment or grant a new trial "only during the term of court in which the final judgment was

entered." *Herrera v. Collins*, 506 U.S. 390, 408 (1993); *accord Bronson v. Schulten*, 104 U.S. 410,

415–16 (1881) (collecting cases); *Albers v. Whitney*, 1 F. Cas. 302, 303 (C.C.D. Mass. 1840) (No.

137). This "term rule"[4] brought about a corollary rule of appellate jurisdiction under which an

immediate appeal would lie to review a trial court's alleged violation of the term rule. The case in

point—which Bressi correctly identifies—is *Phillips v. Negley*, 117 U.S. 665 (1886). *Phillips* re-

viewed, on writ of error, an order that set aside a judgment and granted a new trial after the term

had ended. *Id*. at 668, 679. Addressing the respondent's objection that such an order is "not a final

judgment, and, therefore, not reviewable on writ of error," *id*. at 671, the Supreme Court held that

the question of its own jurisdiction "necessarily involve[d] the jurisdiction of the [trial court] and

the nature and effect of the order brought into review," *id*. at 672. For if, explained the Court, the

---

[4] The term rule itself dates at least to the early seventeenth century. Sir Edward Coke wrote in his commentary upon Littleton that

> during the terme wherein any judiciall act is done, the record remaineth in the brest
> of the judges of the court, and in their remembrance, and therefore the roll is alter-
> able during that terme, as the judges shall direct; but when that terme is past, then
> the record is in the roll, and admitteth no alteration, averment, or proof to the con-
> trarie.

1 EDWARD COKE, INSTITUTES OF THE LAWS OF ENGLAND § 438, p.260 (3d ed. 1633); *see also* 3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *406–11 (1769).

order was made "without jurisdiction on the part of the court making it, then it is a proceeding which must be the subject of review by an appellate court." *Id*.

¶ 12    *Phillips* was but one of many such cases. Throughout the nineteenth and early twentieth centuries the Supreme Court repeatedly exercised appellate jurisdiction when the impetus for the appeal was a violation of the term rule. *See United States v. Mayer*, 235 U.S. 55, 67 (1914) (collecting cases from 1812 to 1910). And when the term rule eventually was replaced in 1946 by the Federal Rules of Civil Procedure—which established "precise times, independent of the term," to "alter or amend a final order," *Browder v. Director, Department of Corrections*, 434 U.S. 257, 271 (1978) (quoting *United States v. Smith*, 331 U.S. 469, 473 n.2 (1947))—the *Phillips* principle of appellate jurisdiction was molded to fit the new deadlines established by the federal rules, as the *Maylie* line of cases demonstrates.

¶ 13    To be sure, not everyone has endorsed the *Maylie* line of cases. At least three state court decisions have rejected it,[5] and one treatise views it as a "fictitious expansion" of *Phillips*. 15A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE—JURISDICTION § 3915.5 (2d ed. 1992). Even so, we are unconvinced that the arguments opposing immediate appellate review in these limited circumstances outweigh the arguments supporting it. One opposing argument is that immediate review of a granted Rule 60 motion is unnecessary because there are other means of relief; one can always obtain review after the subsequent final judgment or else seek a prerogative writ, like mandamus. *See McClendon v. City of Albuquerque*, 630 F.3d 1288, 1297–98 & n.3 (10th Cir. 2011); 15A WRIGHT & MILLER—JURISDICTION

---

[5] *See Wiechman v. Huddleston*, 370 P.3d 1194, 1199–1200 (Kan. 2016); *Levitt, Hamilton, & Rothstein, LLC v. Asfour*, 587 S.W.3d 1, 4–9 (Tenn. Ct. App. 2019); *Baca v. Atchison, Topeka, & Santa Fe Ry. Corp.*, 918 P.2d 13, 15–17 (N.M. Ct. App. 1996).

§§ 3915.5, 3916 & n.54. But that argument elevates form over function. A rigid application of the final judgment rule would have us forswear relief now—where there is a facial, colorable challenge to jurisdiction below—wait for the parties eventually to litigate to a final judgment, and *then* upend everything the parties had done on the ground that the lower court had been acting without jurisdiction all along. Though possible, that is a most impractical means of relief. Its possibility, however, undermines the prospect of a prerogative writ.[6] Mandamus, for instance, will lie only if there are "no other adequate means to attain the relief" desired, *In re Le Blanc*, 49 V.I. 508, 517 (V.I. 2008), and that is precisely why the U.S. Supreme Court has warned that a trial court's granting a new trial "rarely, if ever, will justify the issuance of a writ of mandamus," *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (*per curiam*).

¶ 14    Another opposing argument is that immediate review will prompt a "flurry of imaginative attempts to recharacterize asserted errors as matters of [trial] court power," *McClendon*, 630 F.3d at 1297 (cleaned up), which in turn will create substantial costs and delays, *Baca v. Atchison, Topeka, & Santa Fe Railway Corp.*, 918 P.2d 13, 15 (N.M. Ct. App. 1996). But the narrowness of the rule ought to dissuade these concerns. The rule would be limited to the circumstances presented

---

[6] It rules out the collateral order doctrine as well, which is available in the Virgin Islands only if the order at issue is "effectively unreviewable on appeal from a final judgment." *Beachside Assocs. v. Fishman*, 53 V.I. 700, 709 (V.I. 2010); *accord Stubblefield v. Windsor Cap. Grp.*, 74 F.3d 990, 997 (10th Cir. 1996) (holding that since the appellant is "free to seek review of the district court's decision [to grant a Rule 60(b) motion] after a final judgment is entered," the grant is not "effectively unreviewable" and hence not immediately appealable under the collateral order doctrine). A jurisdiction with a more expansive version of the collateral order doctrine may, of course, allow an appeal where we would not. For example, the Supreme Court of Pennsylvania has permitted an appeal of a denial of summary judgment based on the definition of "collateral order" in the Commonwealth's appellate rules. *See Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 426, 434 (Pa. 2006). Whereas we evaluate "effective unreviewability," *Pridgen* evaluated whether waiting until final judgment would be so "substantial[ly] cost[ly]" as to constitute a "sufficient loss" under the Commonwealth's rule, and it held that the case before it—"complex litigation" involving consolidated products liability actions and a federal statute of repose—met that standard. *Id*. at 433.

in this case, so absent a colorable challenge under Appellate Rule 5(a)(4) to the Superior Court's jurisdiction, our own jurisdiction will fail, and the appeal will be dismissed. *Accord Wolfork*, 239 A.3d at 281 (quoting *Asset Acceptance*, 241 S.W.3d at 333). And given the plain text of Appellate Rule 5(a)(4), we are confident that the Superior Court will "usually get it right." *Asset Acceptance*, 241 S.W.3d at 334. Thus, immediate review will strike a balance between, on one hand, "equitable insistence on justice at all costs" and, on the other, the vital interests that "litigation must at some point conclude" and that courts must not "lightly . . . overturn[]" the parties' "reasonable expectations founded upon long-established final judgments." *Id.*

¶ 15    In sum, we find the *Maylie* line of cases persuasive. Therefore, we hold that where (1) the Superior Court grants a motion that is specifically enumerated in and subject to Appellate Rule 5(a)(4), and (2) the adverse party appeals on the sole ground that the Superior Court had lost jurisdiction to grant the motion because the 120-day "deemed denied" deadline in Appellate Rule 5(a)(4) had already expired, then this Court will assume jurisdiction to determine whether the order is indeed repugnant to Appellate Rule 5(a)(4). We emphasize that to invoke our jurisdiction the appellant must, on the face of the record, present a colorable challenge to the Superior Court's jurisdiction under Appellate Rule 5(a)(4) and appeal solely on that basis. These requirements will ensure immediate correction of a narrow class of trial court orders without unduly disrupting the final judgment rule.

¶ 16    Applying this rule here, we conclude that we do have jurisdiction over this appeal. First, the 2023 Order granted Appellees' motion for relief from judgment, which is a motion enumerated in and subject to Appellate Rule 5(a)(4). Second, Bressi's appeal presents a colorable challenge to the Superior Court's jurisdiction under Appellate Rule 5(a)(4) and—most importantly—is confined to that issue alone.

## B. Standard of Review

¶ 17    We review the Superior Court's factual findings for clear error and its legal conclusions *de novo*. *Daley-Jeffers v. Graham*, 69 V.I. 931, 935 (V.I. 2018). We review a ruling on a motion for relief from judgment under Rule 60(b) for abuse of discretion. *Appleton v. Harrigan*, 61 V.I. 262, 268 (V.I. 2014); *accord Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008). Regarding Appellate Rule 5(a)(4), the Superior Court is "presumed to be aware" of the rule and "the effect of [the court's] failure to rule on a motion within the mandated period." *Atl. Human Resource Advs., LLC v. Espersen*, 2022 VI 11, ¶ 63. In *Espersen* we applied abuse-of-discretion review after the Superior Court did not rule within 120 days on a motion that ordinarily would be subject to abuse-of-discretion review. *Id*. This case similarly involves the court's failure to rule within 120 days on a post-judgment motion ordinarily subject to abuse-of-discretion review—the only difference being that the court *then* ruled on the motion. Since the court's ruling was an exercise of discretion under Appellate Rule 5(a)(4), we also review for abuse of discretion. But inasmuch as the court relied on a legal interpretation to justify its granting the motion after 120 days, we apply plenary review, since we "exercise plenary review of the Superior Court's application of law." *Edward v. GEC, LLC*, 67 V.I. 745, 752 (V.I. 2017).

## C. Appellate Rule 5(a)(4)

¶ 18    We proceed to the question whether the 2023 Order is repugnant to Appellate Rule 5(a)(4). The answer is yes. The rule provides, as relevant here, that a motion "to alter or amend the judgment"—referring to a Rule 59(e) motion—or a motion "(if filed within 28 days) for relief from the judgment"—referring to one under Rule 60(b)—extends the time to appeal until 30 days after the Superior Court disposes of that motion. V.I. R. App. P. 5(a)(4). But if the court fails to dispose of the motion "within 120 days," then the motion is *ipso facto* denied for purposes of appeal. *Id*. In

that event, Appellate Rule 5(a)(4) "divest[s] the Superior Court of jurisdiction to rule on the post-trial motion," and any subsequent ruling is a "nullity" and void. *Companion Assurance Co. v. Smith*, 66 V.I. 562, 570 (V.I. 2017); *accord Alexander v. Gov't of the V.I.*, 2026 VI 1, ¶ 14. *Cf. Ex parte Miller*, 335 So. 3d 1151, 1154 (Ala. 2021) (holding that an order entered after the "deemed denied" deadline in Alabama's rule exceeds the court's jurisdiction and is "void"); *Paxton Res., LLC v. Brannaman*, 95 P.3d 796, 802 (Wyo. 2004) (same under Wyoming's rule); *Highland Gardens Nursery, Inc. v. N. Am. Devs., Inc.*, 494 S.W.2d 321, 323–24 (Mo. 1973) (same under Missouri's rule); *Sumner v. Bennett*, 608 P.2d 566, 570 (Or. Ct. App. 1980) (same under Oregon's rule). The object of Appellate Rule 5(a)(4) is to ensure the "prompt administration of justice" by "prevent[ing] cases from lying dormant in the trial court due to failures to rule on post-trial motions." *Companion Assurance*, 66 V.I. at 569–70. *Cf. Highland Gardens*, 494 S.W.2d at 323–24 (similar for Missouri's rule); *Paxton Resources*, 95 P.3d at 800 (similar for Wyoming's rule); *Sumner*, 608 P.2d at 570 (similar for Oregon's rule).

¶ 19 Here, the Superior Court entered the 2023 Order well after the 120 days had expired—six years after, to be precise. The timeline is straightforward: In 2016 the Superior Court dismissed this case. Less than 28 days later, Appellees filed their motion for relief, which triggered Appellate Rule 5(a)(4).[7] The court then had 120 days to dispose of the motion. It did not do so. The motion was thereby denied, and Appellees had another 30 days to appeal. They did not do so. The court,

---

[7] The motion, which cited Rules 59(e), 60(a), and 60(b), did not take especial care to describe the precise form of relief it was seeking. Regardless, it is axiomatic that the "substance of a motion, and not its caption, shall determine under which rule that motion is construed." *Anthony v. First-Bank V.I.*, 58 V.I. 224, 228 n.5 (V.I. 2013). Rule 60(a) could not have been the source of the relief Appellees requested, as we explain below. As for Rules 59(e) and 60(b), we need not decide under which rule Appellees actually brought their motion because either one would have triggered Appellate Rule 5(a)(4).

therefore, was divested of jurisdiction, and this case was at an end. Yet six years later the court purported to grant the motion, enter the 2023 Order, and greenlight Appellees' counterclaims for further proceedings. Under Appellate Rule 5(a)(4) and the holding of *Companion Assurance*, the 2023 Order is void. *Companion Assurance*, 66 V.I. at 570; *accord Alexander*, 2026 VI 1, ¶ 14. *Cf. Miller*, 335 So. 3d at 1155 (applying Alabama's rule); *Paxton Resources*, 95 P.3d at 802 (applying Wyoming's rule); *Highland Gardens*, 494 S.W.2d at 324 (applying Missouri's rule); *Sumner*, 608 P.2d at 570 (applying Oregon's rule).

¶ 20     Appellees resist Appellate Rule 5(a)(4) entirely. It does not apply at all, they argue, because the 2023 Order did not grant relief under Rule 59(e) or 60(b); it used Rule 60(a) to correct a clerical mistake, which Appellees say may be done anytime.[8] But the 2023 Order could not possibly have used Rule 60(a) to grant the relief it did.[9] Rule 60(a) allows a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." V.I. R. CIV. P. 60(a). The mistakes to which Rule 60(a) refers are flaws "in the translation of the [court's] original meaning to the judgment." *United States v. Griffin*, 782 F.2d 1393, 1396 (7th Cir. 1986). Thus, computation errors, mislabeled parties, and inadvertent

---

[8] Rule 60(a) aside, Appellees' argument suffers from a fundamental problem. Its implicit assumption—that the court's order, not the party's motion, dictates whether Appellate Rule 5(a)(4) applies—is false. The text of the rule makes plain: The 120-day clock is set in motion when "any *party* timely files in the Superior Court a *motion*" enumerated in the rule. V.I. R. APP. P. 5(a)(4) (emphasis added). And in *Simon v. Herbert*, 69 V.I. 963, 968–69 (V.I. 2018), we confirmed what the text says, holding that the trial court erred in invoking Appellate Rule 5(a)(4) to deny a Rule 60(b) motion because the motion, not being filed "within 28 days" as the rule requires, never triggered the rule in the first place. So even supposing the 2023 Order here *were* a Rule 60(a) order, Appellees would have triggered Appellate Rule 5(a)(4) all the same when they filed a motion enumerated in that rule.

[9] Like Appellees' motion, the 2023 Order was rather ambiguous, citing both Rule 60(a) and 60(b). Either way, we are "not constrained by the trial court's characterization of [an] order." *Coral Mgmt. Grp., LLC v. Gov't of the V.I.*, 66 V.I. 552, 557 (V.I. 2017).

omissions are all mistakes that Rule 60(a) may be employed to fix. *See Day v. McDonough*, 547 U.S. 198, 210 (2006) ("computation error[s]"); *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 517 (6th Cir. 2016) ("simple misnomer" in party name); *United States v. Stuart*, 392 F.2d 60, 62 (3d Cir. 1968) ("documents inadvertently omitted from the record"). In other words, the ambit of Rule 60(a) is similar to that of its common law predecessor, the *nunc pro tunc* entry: It ensures that the record "speak[s] the truth," *Frongillo v. Bank of St. Croix, Inc.*, 2026 VI 3, ¶ 9; it cannot make the judgment "say something other than what originally was pronounced," 11 WRIGHT & MILLER—CIVIL § 2854.

¶ 21    Appellees target the 2016 dismissal as the mistake in this case. But Rule 60(a) covers only a "subset" of mistakes: "clerical ones," not "mistakes *simpliciter*." *Kemp v. United States*, 596 U.S. 528, 537 (2022) (cleaned up). The 2016 dismissal was not a clerical mistake; the court "did not write one thing when [it] meant to write another, and no inferior officer made a record not corresponding to the action of the court." *Patch v. Wabash R.R. Co.*, 207 U.S. 277, 281 (1907). On the contrary, the 2016 dismissal was an entry of judgment—a determination the court made deliberately and upon certain assumptions about what the parties had filed, and "Rule 60(a) does not cover acts deliberately done." *Kelly v. Matlack, Inc.*, 903 F.2d 978, 985 (3d Cir. 1990) (citing *Sec'y Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1065 (10th Cir. 1980)); *accord* 11 WRIGHT & MILLER—CIVIL § 2854 n.25 (collecting cases). In determining that dismissal was proper, the court doubtless made a mistake of fact about whether Appellees had filed an answer or counterclaims, but that factual mistake makes no difference. A "factual mistake in making [the] original determination" does not give the court license to use Rule 60(a) to "change[] its mind." *Braun*, 828 F.3d at 515 (emphasis omitted). Even at its outer reaches, Rule 60(a) cannot "alter the original meaning [of the judgment] to correct a legal or factual error." *Griffin*, 782 F.2d at 1397.

Errors of that sort "are to be corrected by a motion under Rules 59(e) or 60(b)." 11 WRIGHT & MILLER—CIVIL § 2854; *accord Kemp*, 596 U.S. at 537 (citing Rule 60(b)); *Griffin*, 782 F.2d at 1398 (same); *Pfizer, Inc. v. Uprichard*, 422 F.3d 124, 130 n.9 (3d Cir. 2005) (citing Rule 59(e)). Thus, Appellees cannot use Rule 60(a) to circumvent or avoid the effects of Appellate Rule 5(a)(4).[10]

### III. CONCLUSION

¶ 22 Appellate Rule 5(a)(4) deprived the Superior Court of jurisdiction to grant Appellees' motion for relief from the 2016 dismissal. Therefore, the 2023 Order, which purported to grant Appellees' motion more than six years after jurisdiction was lost, is void. The 2023 Order is reversed, and the 2016 dismissal is reinstated.

**Dated this 8th day of June 2026.**

BY THE COURT:

/s/ Rhys S. Hodge
**RHYS S. HODGE**
**Chief Justice**

ATTEST:

**DALILA PATTON, ESQ.**
**Clerk of the Supreme Court**

By: /s/ Dayanara Felix
  **Deputy Clerk II**

**Dated:** June 8, 2026

---

[10] If the 2023 Order *could* have been a valid Rule 60(a) order, then we may have had to confront a possible conflict between Appellate Rule 5(a)(4)'s deadline of 120 days and Rule 60(a)'s license to correct clerical mistakes "whenever" one is found. *Compare* V.I. R. APP. P. 5(a)(4) *with* V.I. R. CIV. P. 60(a). But since, as explained above, the 2023 Order could not have been valid under Rule 60(a), we leave that potential conflict for another day.